JEMIMA E. RHODES et al.

.*v*.

ROBERT SHAW et al.

. A testator gave all his estate to his wife "to manage and dispose of, in her ·discretion, for her own use and in trust for my children, during her life, or during the period that she remains my widow." He then gave a contingent annuity to his son Charles, and then provided that all his property be equally divided among all his children, alike, excepting the contingent annuity to Charles.—*Held*, that the interest of each of his children vested at his death, .and that, consequently, the share of one who died before his mother was devisable.

On bill, answer, and proofs.

*Mr. Theodore Simonson*, for complainants.

*Mr. Charles J. Roe*, for defendants.

BIRD, V. C.

Albert Shaw died seized of real estate. He left a last will and testament. The second clause was in these words:

"I do give and bequeath to my beloved wife, Polly Maria Shaw, the whole of my property, both real and personal, to manage and dispose of in her discretion for her own use, and in trust for my children, during her life, or during the period that she remains my widow."

In the third paragraph, he directed that, in case his wife should die, or marry, before his son Charles became of age, the sum of $250 should be paid to him annually, to enable him to obtain an education, until he should become twenty-one years of age.

In the fourth paragraph, he directed that, as soon as conveniently could be done after Charles became of the age of twenty-one years, the sum of $500 should be paid each of his children, or their living representatives.

The fifth paragraph is in these words:

"It is my will, and I hereby order, that all my property be equally divided among all my children, male and female alike, except that in case of the contingency happening before the majority of Charles Wensley, I desire that the full sum of $250 annually, till his death, be allowed him, in addition to his equal share with the rest."

During the lifetime of the widow, William Henry, one of the children of the above-named testator, died, leaving a will, in and by which he disposes of all his real and personal estate. The question is, whether or not he had such interest in the lands of his father at the time of his death (the widow, being the life tenant, then living) that he could dispose of it by will, and whether the devisees therein named took any interest or not under the will of the said William Henry. In other words, considering the language of the will of Albert Shaw, the first testator, was the interest which he gave to his children, upon the death or marriage of his widow, vested or contingent?

It will be seen, by reading the paragraph first above quoted, that Polly Shaw had the right to manage and dispose of the real and personal estate, not only for her own use, but, in trust, for the children of the testator, and only during her life, or so long as she should remain the testator's widow. Now, it seems to me that, though there be a power of disposition, it did not prevent the vesting of the title, subject to be divested in case of the execution of the power, for the purpose expressed. It will be noted that the gift is for the benefit of the widow and of the testator's children. She is to manage and to dispose of the estate, in her discretion, for her own use and in trust for his children during the time named. Her interests are blended with theirs. She can take no step looking exclusively to her own benefit or advantage; but every step in the management and disposition of the estate must alike concern the testator's children. So far as the postponement of the possession is concerned until the period named—the death of the wife, or her marriage—it is somewhat analogous to the case of *Post* v. *Herbert, 12 C. E. Gr. 540.* In that case it was insisted that the legacy did not vest; but the court decided that where the postponement is made for the benefit of those concerned in the estate, it does not prevent the vesting.

And it is perfectly manifest that the testator in this case did not intend to put the absolute disposition of his estate in the hands of his widow; for, in the next paragraph, he provides for the payment, out of his estate, of the sum of $250 to his son Charles Wensley, "every year, until he arrives at the age of twenty-one." And it provides, in the next paragraph, for the payment of $500 to each of his children, "as soon as conveniently can be, after Charles Henry arrives at the age of twenty-one." And in the fifth paragraph, above quoted, he orders all the estate to be equally divided among his children. But it does not even say, "all that may remain unused or undisposed of." In *Hawkins on Wills 237*, the author says: "In the construction of devises of real estate, it has long been an established rule for the guidance of the court, that all the estates are to be holden to be vested, except estates in the devise of which a condition precedent to the devising is so clearly expressed that the courts cannot treat them as vested without deciding in direct opposition to the terms of the will [referring to *Duffield* v. *Duffield, 1 Dow & Cl. 268, 311*]. To accomplish this—first, words of seeming condition are, if possible, held only to have the effect of postponing the right of possession; and second, if the devise be clearly conditional, the condition will, if possible, be construed as a condition subsequent, and not precedent, except to confer an immediately vested estate, subject to be divested on the happening of the contingency."

On page 238, the same author, quoting from *Goodtitle* v. *Whitby, 1 Burr. 228*, says: "Where an absolute property is given, and a particular interest given in the meantime, as until the devisee shall come of age &c., and when he shall come of age &c., the rule is, that that shall not operate as a condition precedent, but as a description of the time when the remainderman is to take possession." From the authorities I, therefore, conclude that where the devise of the intermediate estate is to a life tenant, or for any other uncertain period, for the benefit of such life tenant, and for those who take the remainder, with a gift of the whole estate in remainder, the fee vests immediately upon the death of the testator.

Again, although there is a power of disposition, the gift to the

widow is for life, not generally, without any limitation as to time, and that out of such gift distinct legacies are given to children, to be paid during the life estate, and that all of the estate is given over after the death of the life tenant, which seems to bring the case within *Pratt* v. *Douglas, 11 Stew. Eq. 516,* and *Downey* v. *Borden, 7 Vr. 460.*

My attention has been called to the case of *Annin* v. *Vandoren, 1 McCart. 135,* by the counsel of the defendants, who insists that, if that case does control this, it must be clear that the fee does not vest until the death or marriage of Mrs. Shaw, the life tenant. Plainly, to my mind, the latter part of this proposition is disposed of by the cases above referred to; nor can I see how the case of *Annin* v. *Vandoren* can affect this. The language of the testator there was:

"Should my daughters, Lenah and Mary, or either of them, die leaving no legal issue, the share or shares herein bequeathed to her or them (if not paid over by my executors, and if paid over, then such part thereof as remains unexpended), I give and bequeath unto my surviving children and their heirs, equally between them."

Which language the learned chancellor considered gave the absolute estate to Lenah and Mary; but in which there is no interest given in trust to any one else, as in the case now under consideration. In that case the gift was to Lenah and Mary. In the case under consideration the gift was to Polly, for herself and for the children of the testator, and only during her life or her widowhood, without the power of disposing of it or expending it solely for her own use, but controlled by the interest of the children of the testator. Another important distinction will not escape attention, that is, that in this case the legacy is not to Mrs. Rhodes generally, but for life or during her widowhood, while in the Annin case it was general, no limitation as to time being imposed.

In my judgment, a vested interest passed with the gift.